# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

```
************************************
Katherine R. Brady,                 *
                                    *
        Appellant,                  *
                                    *
v.                                  *       Case No. 1:22-cv-00272-JL
                                    *
Lawrence P. Sumski,                 *
Chapter 13 Trustee                  *
                                    *
        Appellee.                   *
                                    *
************************************
```

Appeal from Chapter 13 bankruptcy case, BK. No. 21-10712-BAH, pending in the United States Bankruptcy Court, District of New Hampshire

**Brief for the State of New Hampshire, Department of Justice, Consumer Protection and Anti-Trust Division, as Amicus Curiae in Support of Appellant and Urging Reversal**

The State of New Hampshire, Department of Justice, Consumer Protection and Anti-Trust Division, by and through counsel, Zachary N. Towle, Assistant Attorney General, and Mary F. Stewart, Attorney, for the State of New Hampshire, Department of Justice, 33 Capitol Street, Concord, NH 03301, (603) 271-1139, Mary.F.Stewart@doj.nh.gov.

Dated:      9/14/2022

i

# TABLE OF CONTENTS

*STATEMENT OF INTEREST OF AMICUS CURIAE* ............................................................... 1

*ARGUMENT*.................................................................................................................................. 2

    A. Certification to the New Hampshire Supreme Court ........................................................ 2

    B. The Homestead and the Homestead Right........................................................................ 3

    C. Establishing the Homestead Right..................................................................................... 4

    D. The Brady Court's Decision............................................................................................... 6

    E. Applying the Homestead Right ......................................................................................... 7

*CONCLUSION*............................................................................................................................... 9

# TABLE OF AUTHORITIES

### Cases

Ambrose v. New England Ass'n of Schs. & Colleges, Inc., 252 F.3d 488 (1st Cir. 2001)............. 2

Barney v. Leeds, 51 N.H. 253 (1871) ..................................................................................... 4, 6

Beland v. Goss, 68 N.H. 257 (1895)............................................................................................ 6

Currier v. Woodward, 62 N.H. 63 (1882).................................................................................... 3

Deutsche Bank Nat'l Tr. Co., Tr. for FFMLT Tr. 2005-FF2 v. Pike, 916 F.3d 60 (1st Cir. 2019)  8

Deyeso v. Cavadi, 165 N.H. 76 (2013)........................................................................................ 3

Garland v. Town of Exeter, 159 N.H. 136 (2009) ....................................................................... 2

Gerrish v. Hill, 66 N.H. 171 (1890)............................................................................................. 6

Gunnison v. Twitchel, 38 N.H. 62 (1859) .................................................................... 3, 4, 6, 8

Hoitt v. Webb, 36 N.H. 158 (1858) ................................................................................. 3, 7

Horn v. Tufts, 39 N.H. 478 (1859) .................................................................................. 4, 6

In re Boston Regional Med. Ctr., Inc., 410 F.3d 100 (1st Cir. 2005) ............................... 2

Lake v. Page, 63 N.H. 318 (1885) ................................................................................... 4, 6

Maroun v. Deutsche Bank Nat'l Tr. Co., 167 N.H. 220 (2014) ............................... 3, 7, 8

Meader v. Place, 43 N.H. 307 (1861) ............................................................................. 4, 6

Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644 (2007)......................... 5

Petition of Carrier, 165 N.H. 719 (2013) .......................................................................... 2

Sabato v. Fed. Nat'l Mortg. Ass'n, 172 N.H. 128 (2019).................................................. 8

Showtime Entertainment, LLC v. Town of Mendon, 769 F.3d 61 (1st Cir. 2014) .......... 2

Squire v. Mudgett, 63 N.H. 71 (1884) ............................................................................... 4

Stewart v. Bader, 154 N.H. 75 (2006) ........................................................................... 3, 6

Tucker v. Kenniston, 47 N.H 267 (1867) .......................................................................... 3

Winnacunnet Co-op. Sch. Dist. v. Town of Seabrook, 148 N.H. 519 (2002) ................... 5

Statutes

N.H. Rev. Stat. Ann. § 480:1 ........................................................................................... 5, 7

N.H. Rev. Stat. Ann. § 480:3-a ..................................................................................... 4, 5, 8

## STATEMENT OF INTEREST OF AMICUS CURIAE

The State of New Hampshire, Department of Justice, Consumer Protection and Anti-Trust Division (the "Division"), has a strong interest in ensuring New Hampshire citizens' homestead rights are protected and the statutes providing for such rights are accurately interpreted. Whether N.H. Rev. Stat. Ann. ("RSA") § 480:1 allows a non-owner spouse to claim a homestead exemption is of significant interest to New Hampshire consumers both inside and outside a bankruptcy case. This Court's decision will have a broad impact on the ability of New Hampshire consumers to obtain a fresh start through bankruptcy and may endanger home ownership for married consumers outside of bankruptcy with debts they cannot pay if there is equity in their home. Although federal court decisions are persuasive authority regarding state law outside the bankruptcy context, as a practical matter, this will be the only decision of record interpreting the extent of the non-owner spouse's homestead exemption and will likely be referred to by creditors in state court collection cases statewide. Given the economics of legal representation, most consumers fighting debt collection outside of the bankruptcy process are unrepresented by counsel and lack the means and specialized knowledge required to raise, argue, and appeal this important state law issue.

The Division is therefore filing this Brief pursuant to Fed. R. Bankr. P. 8017(a)(2). In doing so, the Division requests that this Court reverse the bankruptcy court's determination that ownership is a prerequisite for the homestead right under RSA § 480:1. Alternatively, if this Court concludes that New Hampshire law is unclear on this point, the Division requests that this Court certify that important question of state law to the New Hampshire Supreme Court for definite resolution.

1

## ARGUMENT

**I. The Division asserts the bankruptcy court incorrectly concluded that ownership is a pre-requisite for the homestead right under RSA § 480:1, thereby incorrectly precluding non-owning spouses from asserting their homestead right in the homestead estate owned by their spouse.**

### A. Certification to the New Hampshire Supreme Court

This matter involves significant and important interpretations of New Hampshire law. To resolve these state law questions, this Court must first discern how the New Hampshire Supreme Court would likely construe these statutory provisions, even if this Court's independent judgment may differ. See e.g. Showtime Entertainment, LLC v. Town of Mendon, 769 F.3d 61, 79 (1st Cir. 2014); Ambrose v. New England Ass'n of Schs. & Colleges, Inc., 252 F.3d 488, 497-98 (1st Cir. 2001); In re Boston Regional Med. Ctr., Inc., 410 F.3d 100, 108 (1st Cir. 2005). In interpreting statutes, the New Hampshire Supreme Court "first look[s] to the language of the statute itself, and, if possible, construe[s] that language according to its plain and ordinary meaning." Petition of Carrier, 165 N.H. 719, 721 (2013). It "interpret[s] legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garland v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). The New Hampshire Supreme Court "construe[s] all parts of a statute together to effectuate its overall purpose and avoid absurd or unjust result." Petition of Carrier, 165 N.H. at 721. "However, where [the] court determines that the path of state law is sufficiently undeveloped, or the correct answer to the question before [the court is] sufficiently unclear, so as to make such prophetic action unwise, [the court] may instead choose to certify such questions to the highest court of the states." Showtime Entertainment, LLC, 769 F.3d at 79.

The Division contends this Court is capable of discerning how the New Hampshire Supreme Court would likely interpret RSA chapter 480 regarding ownership being a pre-requisite for a homestead right under RSA § 480:1. The purpose of RSA chapter 480 is clear; the language of RSA § 480:1 and 480:3-a is clear; and New Hampshire case law lays a clear and predictable path to the conclusion that non-owning spouses are entitled to a homestead right with independent value as established in RSA § 480:1. To the degree this Court determines the relevant state law is sufficiently undeveloped or the correct answer to the questions posed in this matter is sufficiently unclear so as to make prophetic action unwise, the Division supports the certification of the questions raised in this matter to the New Hampshire Supreme Court.

**B. The Homestead and the Homestead Right**

New Hampshire case law defines the "homestead" as the "home place" and "the home, the house, and the adjoining land, where the head of the family dwells; the home farm." Hoitt v. Webb, 36 N.H. 158, 166 (1858). The homestead is the "dwelling place of the family, where they permanently reside." Tucker v. Kenniston, 47 N.H 267 (1867). "The purpose of the homestead [right] is to secure to debtors and their families the shelter of the homestead roof." Maroun v. Deutsche Bank Nat'l Tr. Co., 167 N.H. 220, 225 (2014), quoting Deyeso v. Cavadi, 165 N.H. 76, 79 (2013); see also Gunnison v. Twitchel, 38 N.H. 62, 69 (1859) ("the great and paramount object of the homestead act [is] . . . to protect and preserve inviolate . . . a family home. . ."). Occupancy of the homestead estate is a pre-requisite for the exercise of the homestead right. See Currier v. Woodward, 62 N.H. 63 (1882); Stewart v. Bader, 154 N.H. 75, 88 (2006).[1] The Court has refined the application of the homestead right to apply to the homestead, and not to the real property of which it is composed. See Gunnison, 38 N.H. at 62 ("[t]he homestead act does not

---

[1] Occupancy is an undisputed requirement for a homestead right under RSA chapter 480. For the purposes of this brief, it will be assumed that all referenced spouses satisfy the occupancy requirement.

carve out the real property occupied as the family homestead . . . an estate of the value of $500, distinct from the residue of the property . . . but only creates, for the mutual benefit of the husband, wife, and minor children, an inchoate right of homestead of that value . . ."); Squire v. Mudgett, 63 N.H. 71, 71 (1884) ("[t]he only measure of the homestead right is value; therefore a homestead right in a life estate is five hundred dollars' worth of that estate, and not five hundred dollars' worth of the premises in which the life estate exists").

RSA § 480:3-a establishes that a non-owning spouse is entitled to occupy *the homestead right* during the owning spouse's lifetime, and the surviving spouse is entitled to *the homestead right* after the death of the owning spouse for the surviving spouse's lifetime. See RSA § 480:3-a. The non-owning spouse possesses an inchoate right in the homestead estate pursuant to RSA § 480:3-a. See Gunnison, 38 N.H. at 62; Horn v. Tufts, 39 N.H. 478, 481 (1859) ("[h]omestead and dower rights are much alike. Both are inchoate during the life of the husband . . ."); Meader v. Place, 43 N.H. 307, 308 (1861) ("[t]he [homestead] right is acquired by virtue of the marital relation, and generally the wife's claims become complete, and can be consummated under proper legal proceedings, after the husband's death"); Barney v. Leeds, 51 N.H. 253, 271-273 (1871) (discussing inchoate nature of a non-owning spouses interest in a homestead estate compared to the vested interest the owner possesses); Lake v. Page, 63 N.H. 318, 319 (1885) ("[t]he homestead right is merely an inchoate right which is not assignable until the homestead is set out and assigned in specific property. It then becomes a vested estate").

**C. Establishing the Homestead Right**

RSA § 480:1 provides:

> Every person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead. The homestead right created by this chapter shall exist in manufactured housing, as defined by RSA 674:31, which is owned and occupied as a

>dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

The statute establishes that every person is entitled to $120,000 worth of their homestead, or their *interest* in their homestead, as *a homestead*. Since a statute is presumed to not contain superfluous or redundant words (see Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 669 (2007); Winnacunnet Co-op. Sch. Dist. v. Town of Seabrook, 148 N.H. 519, 526 (2002)), it must be inferred that the dual usage of the word homestead does not result in redundancy. In other words, the inclusion of both "his or her homestead" and "his or her interest therein" *as a homestead* implies there is a difference between a homestead and an interest in a homestead. The statute's distinction between "his or her homestead" and "his or her interest in his or her homestead" indicates there are two methods to establish the homestead right.

The purpose of the homestead right supports the conclusion that the *interest in homestead* provision refers to the interest a non-owning spouse has in the homestead estate/the homestead right held by the owning spouse. Though *interest in homestead* is not defined in RSA § 480:1, two non-ownership interests in homestead are identified in RSA § 480:3-a. The statute, RSA §480:3-a provides:

>The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime. After the decease of the owner, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor.

RSA § 480:3-a establishes that the owner of a homestead estate and their non-owning spouse are entitled to occupy the homestead right during the owner's lifespan. After the death of the owner, the surviving non-owning spouse is entitled to the homestead right for the life of the survivor. Thus, the statute creates both an inchoate interest of the non-owning spouse which

5

vests upon survivorship as well as an occupancy interest for the non-owning spouse in their spouse's homestead. The statute specifically applies these interests to the homestead right, supporting the conclusion that RSA § 480:3-a identifies an *interest in homestead* held by the non-owning spouse.[2]

The homestead right established in RSA § 480:1 extends to *interests in homestead*, and a non-owning spouse holds an interest in the homestead pursuant to RSA § 480:3-a. The New Hampshire Supreme Court has repeatedly affirmed that non-owning spouses possess an inchoate right in the homestead acquired by virtue of the marriage relation. See Gunnison, 38 N.H. at 62; Horn, 39 N.H. at 481; Meader, 43 N.H. at 308; Barney, 51 N.H. at 271-273; Lake, 63 N.H. at 319. While it is true that one spouse must have an ownership interest for either spouse to claim the homestead right (see Gerrish v. Hill, 66 N.H. 171 (1890); Beland v. Goss, 68 N.H. 257 (1895); Stewart, 154 N.H. at 89), it does not follow that both must have an ownership interest for a non-owner spouse to have an interest in homestead. Non-owning spouses—by virtue of the interests they possess in the homestead pursuant to RSA § 480:3-a—undeniably qualify for the homestead right RSA chapter 480 establishes and are entitled to $120,000 worth of that homestead interest under RSA § 480:1.

**D. The Bankruptcy Court's Decision**

The bankruptcy court relied on the last sentence of RSA § 480:1 to support its conclusion that ownership is a prerequisite to claiming the homestead right. The last sentence of RSA § 480:1 states:

> The homestead right created by this chapter shall exist in manufactured housing … which is owned and occupied as a dwelling by the same person but shall not exist in the land upon

---

[2] Moreover, the existence of RSA § 480:3-a further reinforces the broad applicability of the homestead right to non-owning spouses.

6

> which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

It is important to note that this sentence was added to the homestead statute in 1983 – over 130 years from the statutory creation of the homestead right.[3] The 1983 amendment was part of a larger bill amending several statutes to clarify and reflect that many New Hampshire residents resided in manufactured housing as their home. Prior to this bill, manufactured housing was considered personal property, not real property. The bill amended RSA § 480:1 to allow individuals to assert the homestead right "created by this chapter" in manufactured housing. RSA § 480:1. The bill did not curtail the extent of the homestead right as originally conceived and enacted, but instead expanded it to encompass manufactured housing.

The manufactured housing language in RSA § 480:1 merely acknowledges the applicability of the homestead right to manufactured housing, while clearly delineating the applicability of the homestead right when the manufactured housing and the real property upon which it sits are owned by different people. The bankruptcy court was correct in attempting to read the manufactured housing language of RSA § 480:1 in a manner consistent with the remainder of the statute, but incorrect to read the language as imposing an ownership requirement onto the preceding requirements for a finding of the homestead right.

### E. Applying the Homestead Right

The Division's reading of the homestead statute is consistent with the New Hampshire Supreme Court's interpretation of the homestead statute in Maroun. See Maroun, 167 N.H at 220. The Maroun court was asked to decide if a non-owning spouse's notarized affidavit waiving his homestead right was effective as to a mortgage signed several years later. The Maroun court

---

[3] The first homestead statute, effective January 1, 1852, exempted "the homestead of families from attachment and levy, or sale on execution." Hoitt, 36 N.H. at 158.

7

found the "[t]he statutory protection of the homestead right also extends to spouses who occupy the homestead but are not title owners of the property." Maroun, 167 N.H. at 226; see also Sabato v. Fed. Nat'l Mortg. Ass'n, 172 N.H. 128, 132 (2019); Deutsche Bank Nat'l Tr. Co., Tr. for FFMLT Tr. 2005-FF2 v. Pike, 916 F.3d 60, 68 (1st Cir. 2019). The Court looked to the language of RSA § 480:3-a to establish "a homestead right in both spouses, even when only one spouse legally owns the homestead." Maroun, 167 N.H. at 226. A finding that necessarily implies the non-owning spouse's interest in the homestead, as established by RSA § 480:3-a, is sufficient to establish the homestead right under RSA §480:1.

RSA § 480:1 unequivocally establishes that a person's interest in his or her homestead (i.e. *interest in homestead*) creates a homestead right. There are no provisions which require such an *interest in homestead* to include an ownership interest. An ownership interest in a homestead estate is one way for a person to have a homestead right; possessing an interest in homestead is the other. Under this statutory scheme, to require an *interest in homestead* to include an ownership interest creates redundancy within RSA § 480:1. Moreover, RSA § 480:3-a unequivocally establishes two separate interests which a non-owning spouse has in the owning spouse's homestead right—these interests do not require the non-owning spouse to possess an ownership interest, and in fact are established with the presumption that the non-owning spouse has no ownership interest in the homestead estate. See RSA § 480:3-a (statute references 'owner' and 'spouse of owner,' implying spouse is a non-owner). These non-ownership interests have value, which value is reflected in RSA § 480:1.

RSA § 480 was created to protect the family's home, which includes the non-owning spouse's interest therein. See Maroun, 167 N.H. at 225; Gunnison, 38 N.H. at 69. RSA § 480:1 establishes that every person is entitled to $120,000 worth of his or her homestead estate, and

that every non-owning spouse is entitled to $120,000 worth of his or her interest in the homestead. The homestead right created in RSA chapter 480 includes a right of occupancy and an inchoate right in the owning spouse's homestead right for a surviving, non-owner spouse (RSA § 480:3-a) that the legislature has recognized has monetary value (RSA § 480:1). This system protects the family's home—and the non-owning spouse's interest therein—for both the lifetime of the owning spouse and beyond. Thus, because the homestead right extends to both the owning and non-owning spouse, both the owning and non-owning spouse are entitled to $120,000 in value from the homestead estate under RSA § 480:1. Both the owning and non-owning spouse are entitled to $120,000 in value independently because both individuals have separate and distinct interests in the homestead right.

## CONCLUSION

For many New Hampshire households, the deed to the family home is in one spouse's name. If the owning spouse is a debtor, then their residence is often, simultaneously, their family home and their most valuable asset, thereby making the family home a prime target for creditors. Pursuant to its purpose, the homestead right insulates debtors and their families from losing a roof over their heads upon defaulting on a debt. Thus the interpretation of RSA § 480:1 at issue in this appeal has serious implications for many New Hampshire households.

Public policy concerns regarding the extent of the homestead right underlie many of the arguments for its limitation. Such concerns, however, must be bound by the language and history of the statute. Moreover, concerns regarding non-owning spouses being able to assert the homestead right but not being subject to the risks of owning real property ignore the purpose of the homestead statute and its history. Reducing the exposure of the homestead estate to creditors while affirming that both individuals who maintain the homestead estate are fairly compensated

for their contribution to the home is perfectly in line with the purposes of the homestead right RSA chapter 480 creates.

A non-owning spouse does not reap an undue benefit. Creditors are still free to pursue all of the non-exempt property held by the non-owning spouse to satisfy the non-owning spouse's debt; even if the non-owning spouse did not qualify for a homestead right, the homestead estate would still be out of reach for the non-owning spouse's creditors. In lieu of owning the homestead estate, the non-owning spouse subjects him or herself to be entirely dependent on the owning spouse's financial decision-making to keep a roof over both of their heads, for it is the owning spouse's creditors who would seek to liquidate the homestead estate.

As the purpose of the homestead right is to keep families secure in their homes, it is entirely reasonable to conclude that both the owning spouse and the non-owning spouse may assert the homestead right, with both individuals securing $120,000 in value from the homestead estate. By virtue of the occupancy requirement for the homestead right, both spouses operate and maintain the homestead; both benefit from its security; and therefore both spouses are entitled to enjoy the homestead right as a means to protect and maintain the family home.

For all the foregoing reasons, the Division respectfully requests this Court find that a non-owning spouse may assert a homestead exemption pursuant to RSA § 480:1 in the amount of $120,000 and reverse the decision of the bankruptcy court to the extent it found otherwise.

In the alternative, as this matter involves significant and important interpretation of New Hampshire law, the Division requests this question be certified to the New Hampshire Supreme Court if this Court believes the path the New Hampshire Supreme Court would take is unclear.

Respectfully submitted,

The State of New Hampshire,
Department of Justice

By its attorneys,

JOHN M. FORMELLA,
ATTORNEY GENERAL

ANTHONY J. GALDIERI
SOLICITOR GENERAL

| | |
|---|---|
| 9/14/2022_____ | /s/ Mary F. Stewart_____ |
| Date | Mary F. Stewart BNH 04859 |
| | Attorney |
| | New Hampshire Department of Justice |
| | Office of the Attorney General |
| | 33 Capitol Street |
| | Concord, NH 03301-6397 |
| | Mary.F.Stewart@doj.nh.gov |
| | 603.271.1139 |

Certificate of Service

    I hereby certify under the pains and penalties of perjury, that I have served a copy of the foregoing Brief for the State of New Hampshire Department of Justice as Amicus Curiae in Support of Appellant and Urging Reversal to the following parties via the Court's CM/ECF notice system.

Lawrence P. Sumski
SumskiCh13@gmail.com

Leonard Deming
deminglaw@comcast.net

DATE:  __9/14/2022_____        /s/ Mary F. Stewart_____
                                                                Mary F. Stewart