UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Katherine R. Brady,
      Debtor/Appellant

      v.                               Case No. 22-cv-272-SM
                                           Opinion No. 2022 DNH 150

Lawrence P. Sumski,
Chapter 13 Trustee,
      Appellee

## O R D E R

Katherine Brady appeals from a decision of the Bankruptcy Court holding that she was not entitled to claim a homestead exemption on behalf of her non-debtor husband.  The Bankruptcy Court determined that because Brady's husband did not have an ownership interest in the couple's home, any homestead interest he had was, under New Hampshire law, at best contingent, and then enforceable only upon Katherine's death.

Reasonable people can certainly interpret New Hampshire's ill-defined statutory provisions related to the homestead right in contradictory ways.  But the Bankruptcy Court's construction of those statutes, while reasonable, still seems to be at odds with New Hampshire Supreme Court precedent.  That circumstance, in turn, gives rise to a degree of uncertainty that may prove particularly disruptive in administering the homestead right in

many contexts.  Establishing the nature and scope of the state's
homestead exemption presents issues of particular importance to
New Hampshire, as evidenced by the New Hampshire Attorney
General's amicus appearance in opposition to the Bankruptcy
Court's construction.  And, because reconciling ambiguous and
possibly contradictory statutory provisions, which necessarily
implicates policy choices, is a matter best left within the
authoritative province of the New Hampshire Supreme Court, the
court proposes to certify dispositive questions of law in this
case to the New Hampshire Supreme Court.

### Background

The debtor, Katherine Brady, filed an individual Chapter 7
bankruptcy petition in December of 2021.  Initially, she listed
among her assets a single-family home in Merrimack, New
Hampshire.  Although her husband and children lived with her in
that home, she alone held title to it.  She valued the property
at approximately $235,000.  On Schedule C, Brady listed her
$120,000 homestead exemption pursuant to New Hampshire Revised
Statutes Annotated ("RSA") 480:1.  On Schedule D, she listed a
mortgage deed of approximately $180,000 and no other secured
claims.  In February of 2022, Brady amended her bankruptcy
schedules by increasing the value of her home to roughly
$345,000.  She also asserted an additional $120,000 homestead

2

exemption on behalf of her non-debtor husband (who, as noted above, did not share title to the couple's home).  The Chapter 7 Trustee objected to the husband's homestead exemption and sought its disallowance.

In March of 2022, the court granted Brady's motion to convert her case to one under Chapter 13.  Subsequently, Brady amended Schedule D to her petition to add a second secured claim: that of her husband, in the amount of $120,000 (this appears to have been another way for Brady to assert her husband's claimed homestead exemption).  The Trustee objected to that amendment as well.  On May 2, 2022, the Bankruptcy Court held a hearing on both of the Trustee's objections.  In a written decision, the Bankruptcy Court concluded that, under New Hampshire law, a person must both occupy and have an ownership interest in the underlying homestead to be entitled to a present, enforceable, homestead right under RSA 480:1.  In re Brady, No. BR 21-10712-BAH, 2022 WL 1913497, at *5 (Bankr. D.N.H. June 3, 2022).  The court also determined that although a non-owner spouse does have a homestead right (arising under RSA 480:3-a), that right is contingent in nature and is enforceable only upon the death of the owner-spouse.  Id.

Because Brady's husband did not hold any legal title to the couple's home, the Bankruptcy Court concluded that he held no current enforceable homestead right under RSA 480:1.  And, because his spouse, Brady, had obviously not predeceased him, that court concluded that he held no present homestead right under RSA 480:3-a — at least not one of any monetary value. Consequently, Brady was not entitled to claim a homestead exemption on his behalf on Schedule C of her bankruptcy petition.  For the same reasons, the court concluded that Brady's husband did not hold a secured lien on the couple's home and, therefore, Brady was unable to list such a lien on Schedule D.

## Discussion

It is appropriate to begin by identifying what is <u>not</u> at issue in this case.  First, there is no dispute that the dispositive question of law — whether Brady's husband currently holds a non-contingent $120,000 homestead right in the couple's home — is governed by New Hampshire law.  Second, all seem to agree — indeed, the Trustee concedes — that if Brady's husband <u>had</u> held joint title to the couple's home, the couple would have been "entitled to a combined exemption of $240,000," Appellee's Brief (document no. 8) at 5, and, presumably, Brady would have been entitled to list her husband's homestead exemption on

Schedule C to her bankruptcy petition.  The sole legal issue presented, then, is whether, under New Hampshire law, Brady's non-owning husband has a <u>present</u> (i.e., non-contingent) homestead interest in the couple's home, valued at $120,000.

I.   <u>New Hampshire's Statutory Provisions</u>.

A person's homestead right is established and governed by RSA chapter 480.  Two sections of that statute are particularly relevant in this case, and they provide as follows:

RSA 480:1 - Amount

Every person is entitled to $120,000 worth of his or her homestead, <u>or of his or her interest therein</u>, as a homestead.  The homestead right created by this chapter <u>shall exist in manufactured housing</u>, as defined by RSA 674:31, <u>which is owned and occupied</u> as a dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

RSA 480:3-a - Duration

The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime.  <u>After the decease of the owner</u>, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor.

(emphasis supplied).

5

II.   <u>The Bankruptcy Court's Decision</u>.

The Bankruptcy Court concluded that the "owned and occupied" requirement imposed in the second sentence of RSA 480:1 applies not just to manufactured housing but, instead, to all real property occupied as a homestead.   <u>In re Brady</u>, 2022 WL 1913497, at *4.   Consequently, it found that because Brady's husband did not hold joint title to the couple's home, he did not have any homestead right under RSA 480:1.

> The Court is cognizant that RSA 480:1 does not use the word "owner" or "owned" in the first sentence of the statute but rather refers to a homestead and an "interest therein."   However, the second sentence of the statute does refer to property that "is owned and occupied as a dwelling."   With respect to manufactured housing, the statute is clear that someone must <u>own and occupy</u> the manufactured housing in order to assert a homestead exemption under RSA 480:1.   It is not enough to simply occupy it.   From a public policy standpoint, it would be nonsensical for the homestead exemption to be more restrictive for manufactured housing than it is for all other housing.   Thus, the statute as a whole supports an interpretation that ownership and occupancy are required to claim a homestead exemption in all housing.   To interpret the statute otherwise would discriminate against owners of manufactured housing.

<u>In re Brady</u>, 2022 WL 1913497, at *4.   Moreover, the Bankruptcy Court reasoned that its interpretation of New Hampshire's homestead right was consistent with principles of fairness and equity:

> [A] couple has the right to decide that only one of
> them will own the family homestead, perhaps as [a]
> means to shield the family home from claims that lie
> solely against the non-owner.  But . . . such a choice
> has consequences, and one consequence is that the non-
> owner is unable to assert a homestead exemption under
> RSA 480:1.  If it were otherwise, the non-owner would
> be getting the benefit of non-ownership, e.g., not
> subjecting the family home to potential liens and
> attachments by third-party creditors, but would not be
> experiencing the burden of it, i.e., having no
> homestead exemption under RSA 480:1.  That strikes the
> Court as both inequitable and inconsistent with the
> provisions of the statute.

Id. at *3.


In further support of its interpretation of RSA 480:1, the

Bankruptcy Court pointed to RSA 480:8-a, which provides that to

"establish" the homestead right, "the owner of a homestead or

the wife or husband surviving such owner," may file a petition

with the superior court.  Thus, said the court,

> to pursue an action in state court to establish a
> homestead right, one must be the 'owner' of the
> homestead property or the 'surviving spouse' of such
> owner.  This provision makes a distinction between
> ownership and non-ownership, supporting the view that
> RSA 480:1 only protects an owner's homestead right.

Id. (emphasis supplied).[1]

---

[1]    The Bankruptcy Court also relied upon the opinion in In re
Visconti, 426 B.R. 422 (Bankr. D.N.H. 2001) to support its
interpretation of RSA 480:1.  That reliance, however, seems
misplaced.  In Visconti, the court disallowed the debtor's

In light of those findings, the court concluded that a different section of the statute — RSA 480:3-a — creates and sets the terms of the homestead rights of non-owning spouses:

> [U]under RSA 480:3-a, the Court finds that the non-owner spouse's $120,000 homestead exemption arises only upon the death of the owner. In other words, the Debtor's spouse's interest is contingent. Upon the Debtor's death, the non-owner spouse will be able to step into the shoes of the owner spouse. At that time, the non-owner spouse will be able to assert a $120,000 homestead exemption. Until then, while the non-owner spouse may have a homestead right that can be protected by an exemption under RSA 480:3-a, the value of that exemption is $0. The couple is not allowed to "double-dip" and claim $240,000 as exempt. Otherwise, the ownership requirement of RSA 480:1 would be irrelevant.

Id. at *5 (emphasis supplied).

In short, it is fair to say that the Bankruptcy Court concluded that RSA 480:1 requires a person to both occupy and

---

invocation of his homestead right because, on the date the debtor filed his petition, he neither owned the couple's homestead nor was he still married to its owner. Consequently, the Bankruptcy Court held, somewhat unremarkably, that, "No homestead may be claimed in property owned by an individual to whom the person is not married, even if they occupy the property. Ownership must exist either in the person claiming the homestead or in that person's spouse. On the petition date, the Debtor could not claim any such ownership interest." Id. at 426 (emphasis supplied). While some broad dicta in Visconti can be read to support the Bankruptcy Court's reading of RSA 480:1, the holding does not resolve the parties' current dispute. In this case, Brady's husband was married to her and he occupied the homestead when Brady filed her bankruptcy petition.

have an ownership interest it the homestead in order to hold a
homestead right.  In the Bankruptcy Court's view, RSA 480:3-a,
<u>not</u> RSA 480:1, establishes and sets the terms of the homestead
right in a non-owning spouse, vesting the $120,000 homestead
right only upon the death of the owner spouse.

III. <u>Countervailing Considerations</u>.

    The Bankruptcy Court's decision is clear, thoughtful, and
logical in its reconciliation of ill-defined statutory language.
Still, there are compelling legal arguments that give reason to
doubt its conclusions.  As importantly, much of the Bankruptcy
Court's opinion relies on policy preferences, equity
assessments, and assumptions regarding potential discrimination
against owners of manufactured housing.  Those preferences and
assumptions are not clearly rooted in expressions of legislative
intent or in identified principles of New Hampshire's common
law.  Such value judgments are best left to the authoritative
province of the New Hampshire Supreme Court.

    Among factors weighing against the Bankruptcy Court's
interpretation of a non-owning spouse's homestead right is this:
the New Hampshire Supreme Court has noted that, as its title
suggests ("Duration"), "RSA 480:3-a . . . merely establishes the
duration of the homestead right; <u>it does not define the nature</u>

of the right itself." <u>Boissonnault v. Savage</u>, 137 N.H. 229,
232-33 (1993) (emphasis supplied).  That point undermines the
Bankruptcy Court's opinion, which rests on the contradictory
conclusion that RSA 480:3-a actually creates and defines the
homestead rights of non-owner spouses.

Additionally, a separate New Hampshire statutory provision
can certainly be read to imply that non-owning spouses do have a
present, non-contingent, and vested homestead right in the
couple's home.  That statute, which governs levies and
executions, provides that, "[a]ll real estate, except the
homestead right, may be taken on execution, and may be appraised
and set off to the creditor at its just valuation in
satisfaction of the execution . . .."  RSA 529:1.  It goes on to
state that, "Notice of the time and place of sale shall be given
to the debtor, or left at his abode if he resides in the state."
RSA 529:20.  With regard to the homestead right, that statute
provides, in relevant part, that,

> Along with the notice required under RSA 529:20, the
> party in whose name the execution has issued shall
> provide to any person who resides or appears to reside
> on the real estate to be sold, the following notice by
> certified mail:
>
> NOTICE
>
> IF YOU <u>OR YOUR SPOUSE OWNS</u> AND RESIDES IN THIS
> PROPERTY, YOU AND/OR YOUR SPOUSE MAY BE ENTITLED TO A

HOMESTEAD EXEMPTION PURSUANT TO RSA 480:1.  <u>THIS
EXEMPTS $120,000 FOR A SINGLE PERSON AND $240,000 FOR
A MARRIED COUPLE</u>.

529:20-a (emphasis supplied).  While arguable either way

perhaps, the statutorily required terms of the notice seem to be

more easily read to suggest that a spouse need not hold title to

the homestead in order to have a present (and valuable)

homestead right in it.  Rather, provided the person is married

to the owner and resides at the property, the notice requirement

appears to assume that he or she has a non-contingent homestead

right in the amount of $120,000.


     Finally, the New Hampshire Supreme Court's recent opinion

in <u>Sabato v. FNMA</u>, 172 N.H. 128 (2019) stands in contradiction

to the Bankruptcy Court's conclusions.  The facts presented in

<u>Sabato</u> are somewhat complex, but simplified they are as follows.

A husband and wife occupied a home in Pelham, but only the wife

held legal title to the property.  In 2002, the wife refinanced

her purchase money mortgage and secured her loan by giving a

first mortgage deed that was eventually assigned to Federal

National Mortgage Association ("FNMA").  The wife released her

homestead right, but her husband did not sign the mortgage deed

or otherwise release his homestead right.  So, the non-owning

husband's homestead right had priority over FNMA's first
mortgage deed.  See generally RSA 480:4.

Subsequently, the wife and husband gave a second mortgage
deed to secure a $65,000 home equity line of credit, by which
they both released their homestead rights.  Approximately nine
years later, the second mortgage lender foreclosed its mortgage
deed.  That set up the following somewhat odd lien priority:

> **First position**: second mortgage lender up to the value
> of the non-owning husband's $120,000 homestead right
> (which, because FNMA never obtained a release of that
> right, had priority over FNMA's first mortgage); then

> **Second position**: FNMA up to the value of its loan;
> then

> **Third position**: second mortgage lender for the balance
> of its loan, if any, in excess of $120,000.

At the foreclosure sale, the property was sold for $65,000.
Because that was less than the husband's homestead interest
($120,000) the second mortgage lender was lawfully entitled to
retain all sale proceeds up to the value of its outstanding loan
(which happened to be $65,000, so second mortgage lender was
fully paid).  Then, the "unused" balance of the husband's
homestead exemption ($55,000) retained its priority over FNMA's
mortgage.  So, when FNMA subsequently bought the property from
the foreclosure purchaser, it held sole title to that property

<u>subject to</u> the non-owning husband's remaining $55,000 homestead exemption.

For purposes of this case, the critical point of <u>Sabato</u> is this: the New Hampshire Supreme Court treated the non-owning spouse's homestead right as valid, enforceable, and valued at the then-current statutory amount of $120,000.  That is to say, the non-owning husband held a present, non-contingent homestead right and it had a statutorily prescribed value.  To exercise that right and assert its $120,000 value, he did not have to wait for his spouse to pass, nor did he have to "step into the shoes of the owner."  <u>Brady</u> 2022 WL 1913497 at *5. Consequently, the <u>Sabato</u> opinion is at odds with the Bankruptcy Court's conclusion that the "owned and occupied" language in the second sentence of RSA 480:1 applies generally to all real property.  Indeed, several years ago, the Bankruptcy Court (Yakos, J.) had a different perspective, noting that the limiting language in RSA 480:1 applies exclusively to manufactured housing:

> The New Hampshire statutory provision on homestead exemptions in RSA 480:1 (Supp. 1985) is quite brief: "Every person is entitled to $5,000 worth of his homestead, or of his interest therein, as a homestead . . .."  <u>The remainder of this statutory provision</u> sets forth <u>special rules regarding manufactured housing</u>, i.e., mobile homes, <u>which are not pertinent here</u>.

In re Eckols, 63 B.R. 523, 524 (Bankr. D.N.H. 1986) (emphasis

supplied).


The foregoing certainly suggests that, under New Hampshire

law, except perhaps with respect to manufactured housing,[2] a

spouse need not hold title to the underlying homestead in order

to have a vested, non-contingent homestead right; it is

sufficient if that person occupies the homestead and is married

to the title-holder.


IV.  The "Owned and Occupied" Requirement of RSA 480:1.

As should now be clear, the dispositive issue turns on the

meaning and scope of the "owned and occupied" language in the

second sentence of RSA 480:1.  If that limitation applies

universally — that is, to all real property — then the

Bankruptcy Court was correct: Brady's husband holds no homestead

right by virtue of RSA 480:1 because he does not hold title to

the couple's home.  If, on the other hand, that "owned and

occupied" language applies only to manufactured housing, then

---

[2]     The court says "perhaps" with respect to manufactured
housing because, as discussed more fully below, one plausible
interpretation of RSA 480:1 suggests that even with respect to
manufactured housing, a person need not hold title to the
property in order to have a homestead right in it, provided he
or she occupies it as a homestead and is married to the owner.

the Bankruptcy Court reached the wrong conclusion under state law, and Brady is entitled to invoke her husband's $120,000 homestead exemption.

In 1983, the New Hampshire legislature added the "owned and occupied" language in the second sentence of RSA 480:1 as part of a larger bill that was designed to redefine the way New Hampshire law treated manufactured housing (or "mobile homes," as they had been known).  <u>See</u> An Act Relative to a Transfer Tax on Mobile Homes, Chapter 230 (HB 63), 1981-82 Special Session at 202-09 (effective Aug. 17, 1983).  Historically, manufactured housing had been treated as personal property.  Chapter 230's amendments to various chapters in New Hampshire's Revised Statutes Annotated changed that and provided, going forward, that manufactured housing would be treated as real property. The overarching goal of those amendments was straightforward: to subject the sale of manufactured housing to New Hampshire's real estate transfer tax.

Given the purpose of Chapter 230's statutory amendments, it seems unlikely that the legislature intended to modify existing law as it related to the homestead right, except to provide that the homestead right would be available to those who owned and occupied manufactured housing as a homestead (perhaps — though

not necessarily — on a more restricted basis).  The legislative
history on that point, however, remains murky and the proper
interpretation of the "owned and occupied" language of RSA 480:1
is unresolved.

There is a plausible interpretation of the 1983 amendments
to RSA 480:1 that does not require both occupancy and ownership
for the homestead right to vest (either in manufactured housing
specifically or, more generally, in any real estate occupied as
a homestead).  Because manufactured housing is often situated on
property owned by a third party (a developer, park owner, or
homeowners' association for example), the legislature may have
employed the "owned and occupied" language as a means to make
clear that the homestead right typically attaches only to the
manufactured housing unit and not the underlying real estate
upon which it is set (unless, of course, the same entity holds
title to both).  That is to say, the homestead right attaches to
manufactured housing when an occupant holds title to the unit
and occupies it as a dwelling; the owner of the underlying real
estate may not claim the homestead right unless that person also
holds title to the manufactured housing unit and occupies it as
a homestead.  There may have been no legislative intent to alter
the then-current statutory scheme which seems to have afforded a

present, non-contingent homestead right to both the owner of the homestead and his or her non-owning (but occupying) spouse.

Similarly, there is a plausible interpretation of RSA 480:8-a (upon which the Bankruptcy Court relied) that does not compel the conclusion that non-owning spouses have no present homestead right under RSA 480:1.  To be sure, that statute provides that only the "owner" of the homestead or the surviving spouse of the owner may petition the superior court to "establish" the homestead right.

> **Establishing Right.**  The superior court, upon petition
> of the owner of a homestead or the wife or husband
> surviving such owner, or upon petition of a judgment
> creditor and such notice as it may order, may appoint
> appraisers and cause the homestead right to be set
> off, and a record of the proceedings being made in the
> registry of deeds, the right shall be established as
> against all persons.

RSA 480:8-a (emphasis supplied).  As noted above, the Bankruptcy Court found that provision to be supportive of its conclusion that the spouse of the homestead owner has no present homestead right of any value and that his or her valuable right vests only upon the owning spouse's death.  But it is also reasonable to read RSA 480:8-a as merely establishing a standing priority in the owning spouse with regard to bringing a petition in Superior Court in the first instance.  That is to say, the legislature

may have deemed it best to have the owner of the underlying homestead property file any such petitions and, only if that owner had died, to allow the surviving spouse to file such a petition.  Again, however, the legislative intent and the reason for the language employed in that statute remain unclear.

V.   Certification to the N.H. Supreme Court.

When, in situations such as this, a federal court is called upon to apply state law, it "must take state law as it finds it: not as it might conceivably be, some day; nor even as it should be." Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (citation and internal punctuation omitted).  When state law has been authoritatively interpreted by the state's highest court, this court's role is clear: it must apply that law according to its tenor.  See Id.  When the law is unclear but the signposts are only modestly blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority.  See Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987). However, this court is and should be hesitant to blaze new, previously uncharted state-law trails.  Accordingly, when a dispositive legal question is novel and the state's law in the area is unsettled, certification is often appropriate.  See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974); Arizonans for

18

Official English v. Arizona, 520 U.S. 43, 76 (1997).  See also
Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997)
("[W]hen the meaning of a state law depends on the
decisionmaker's ability to discern the state legislature's
intent from an array of mixed signals, considerations of
federalism, comity, and practicality suggest that the state's
highest tribunal is best positioned to make an informed and
authoritative judgment.").  The signposts here are more than
modestly blurred and the Bankruptcy Court's decision exposes the
array of mixed signals found in the state's statutes and
judicial precedent.

    The New Hampshire Supreme Court has yet to address the
nuanced issues presented in this case.  Moreover, resolution of
those issues implicates significant public policy matters for
the State of New Hampshire.  Indeed, the New Hampshire
Department of Justice, Consumer Protection Division, has
asserted that resolution of the issues presented in this case
"will have a broad impact on the ability of New Hampshire
consumers to obtain a fresh start through bankruptcy and may
endanger home ownership for married consumers outside of
bankruptcy . . .."  Amicus Brief (document no. 5) at 1.
Accordingly, the prudent course at this stage is to certify the
dispositive questions of state law.  Otherwise, our Court of

Appeals would likely have to revisit the question of
certification — a situation that does not represent an efficient
use of either judicial or the litigants' resources.  And, even
if the Court of Appeals decided to resolve the matter on the
merits, lingering doubt would still remain until the New
Hampshire Supreme Court authoritatively construed New
Hampshire's statutes and reconciled New Hampshire legal
precedent.  In the meantime, uncertainty and disruption and a
risk of conflicts in the administration of legal claims related
to the homestead right could continue unabated.

**Conclusion**

The court proposes to certify the following questions of
law to the New Hampshire Supreme Court:

1.    Does the ownership requirement described in the second
sentence of N.H. Rev. Stat. Ann. 480:1 apply to all real
property occupied as a homestead, or does it apply only to
manufactured housing occupied as a homestead?

That is to say, assuming the homestead is real property
other than manufactured housing, does the non-owning
occupying spouse of one who holds a homestead right
pursuant to RSA 480:1 also have a present, vested, non-
contingent homestead right of his or her own, which is
currently valued at $120,000? and

2.    Does a non-owning spouse who occupies a manufactured
housing unit with an owning spouse have a present (i.e.,
non-contingent) and enforceable homestead right with
respect to that home, which is currently valued at
$120,000?

See generally N.H. Supr. Ct. R. 34.  If any party objects to the form of the questions the court proposes to certify, a written objection, along with suggested alternative language, shall be filed on or before **December 15, 2022.**  The court proposes to submit to the New Hampshire Supreme Court, as its statement of facts, the facts as presented in this order.  If any party objects or wishes the court to supplement that statement of facts, that party shall file an objection and a proposed statement of supplemental facts by the same date.

   **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 1, 2022

cc:  Counsel of Record

21