UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Katherine R. Brady</u>,
     Debtor/Appellant

     v.                          Case No. 22-cv-272-SM
                                       Opinion No. 2023 DNH 004

<u>Lawrence P. Sumski</u>,
<u>Chapter 13 Trustee</u>,
     Appellee

**<u>CERTIFICATION ORDER</u>**

Pursuant to Rule 34 of the Rules of the Supreme Court of New Hampshire, the United States District Court for the District of New Hampshire hereby certifies the following questions of New Hampshire law, which may be determinative of causes pending before it and as to which there appears to be no controlling precedent in the decisions of the Supreme Court:

1.    Does the ownership requirement described in the second sentence of RSA 480:1 apply to all real property occupied as a homestead, or does it apply only to manufactured housing occupied as a homestead?

That is to say, assuming the homestead is real property other than manufactured housing, does the non-owning occupying spouse of one who holds a homestead right pursuant to RSA 480:1 also have a present, vested, non-contingent homestead right of his or her own, which is currently valued at $120,000? and

    2.    Does a non-owning spouse who occupies (as a homestead) a manufactured housing unit with an owning spouse have a present, non-contingent, and enforceable homestead right with respect to that home, which is currently valued at $120,000?

## Statement of Relevant Facts

The material facts are undisputed and more fully described in the attached order in <u>Brady v. Sumski</u>, 2022 WL 17360707, 2022 DNH 150 (Dec. 1, 2022). For the Court's convenience, a copy of the underlying opinion of the Bankruptcy Court is also attached. In short, the relevant facts are as follows. To protect a portion of the equity in her home, a debtor in bankruptcy sought to invoke not only her own state homestead exemption, but also that of her non-debtor husband. But, because only the debtor held title to the couple's home, the Bankruptcy Court concluded that her husband had no present homestead right under N.H. Rev. Stat. Ann. ("RSA") 480:1. Instead, pointing to RSA 480:3-a, the Bankruptcy Court held that the non-owning husband's homestead right was contingent and would fully vest only upon the death of his title-holding spouse.[1]

---

[1]    RSA 480:3-a provides that, "The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime. <u>After the decease of the owner</u>, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor." (emphasis supplied).

RSA 480:1 provides that: "Every person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead.  The homestead right created by this chapter shall exist in manufactured housing, as defined by RSA 674:31, which is owned and occupied as a dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing." (emphasis supplied). Resolution of the dispositive questions of New Hampshire law turns on both the scope and meaning of the "owned and occupied" language in the second sentence of that statute.  If the "owned and occupied" limitation applies universally — that is, to all real property — then the Bankruptcy Court was correct: the debtor's husband holds no fully-vested homestead right by virtue of RSA 480:1 because he does not hold joint title to the couple's home.  If, on the other hand, that "owned and occupied" language applies only to manufactured housing, then the Bankruptcy Court reached the wrong conclusion under state law, and the debtor is entitled to invoke her husband's $120,000 homestead exemption.

The circumstances under which the spouse of one who holds sole title to the couple's homestead may exercise his or her own independent homestead right presents a dispositive question of

New Hampshire law with regard to which the Supreme Court of New Hampshire should be accorded deference by this Court. Accordingly, the Justices of the Supreme Court of New Hampshire are respectfully requested to resolve the matter according to New Hampshire law.

    **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

January 12, 2023

cc:  Leonard G. Deming, II, Esq.
     Mary F. Stewart, Esq.


Attachments: Brady v. Sumski, 2022 WL 17360707, 2022 DNH 150
             (Dec. 1, 2022)

             In re: Brady, 2022 WL 1913497, 2022 BNH 003 (Bankr.
             D.N.H. June 3, 2022)

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Katherine R. Brady,
      Debtor/Appellant

      v.                                    Case No. 22-cv-272-SM
                                            Opinion No. 2022 DNH 150

Lawrence P. Sumski,
Chapter 13 Trustee,
      Appellee

## O R D E R

Katherine Brady appeals from a decision of the Bankruptcy
Court holding that she was not entitled to claim a homestead
exemption on behalf of her non-debtor husband.  The Bankruptcy
Court determined that because Brady's husband did not have an
ownership interest in the couple's home, any homestead interest
he had was, under New Hampshire law, at best contingent, and
then enforceable only upon Katherine's death.


Reasonable people can certainly interpret New Hampshire's
ill-defined statutory provisions related to the homestead right
in contradictory ways.  But the Bankruptcy Court's construction
of those statutes, while reasonable, still seems to be at odds
with New Hampshire Supreme Court precedent.  That circumstance,
in turn, gives rise to a degree of uncertainty that may prove
particularly disruptive in administering the homestead right in

many contexts.  Establishing the nature and scope of the state's
homestead exemption presents issues of particular importance to
New Hampshire, as evidenced by the New Hampshire Attorney
General's amicus appearance in opposition to the Bankruptcy
Court's construction.  And, because reconciling ambiguous and
possibly contradictory statutory provisions, which necessarily
implicates policy choices, is a matter best left within the
authoritative province of the New Hampshire Supreme Court, the
court proposes to certify dispositive questions of law in this
case to the New Hampshire Supreme Court.

**Background**

The debtor, Katherine Brady, filed an individual Chapter 7
bankruptcy petition in December of 2021.  Initially, she listed
among her assets a single-family home in Merrimack, New
Hampshire.  Although her husband and children lived with her in
that home, she alone held title to it.  She valued the property
at approximately $235,000.  On Schedule C, Brady listed her
$120,000 homestead exemption pursuant to New Hampshire Revised
Statutes Annotated ("RSA") 480:1.  On Schedule D, she listed a
mortgage deed of approximately $180,000 and no other secured
claims.  In February of 2022, Brady amended her bankruptcy
schedules by increasing the value of her home to roughly
$345,000.  She also asserted an additional $120,000 homestead

exemption on behalf of her non-debtor husband (who, as noted above, did not share title to the couple's home).  The Chapter 7 Trustee objected to the husband's homestead exemption and sought its disallowance.

In March of 2022, the court granted Brady's motion to convert her case to one under Chapter 13.  Subsequently, Brady amended Schedule D to her petition to add a second secured claim: that of her husband, in the amount of $120,000 (this appears to have been another way for Brady to assert her husband's claimed homestead exemption).  The Trustee objected to that amendment as well.  On May 2, 2022, the Bankruptcy Court held a hearing on both of the Trustee's objections.  In a written decision, the Bankruptcy Court concluded that, under New Hampshire law, a person must both occupy and have an ownership interest in the underlying homestead to be entitled to a present, enforceable, homestead right under RSA 480:1.  In re Brady, No. BR 21-10712-BAH, 2022 WL 1913497, at *5 (Bankr. D.N.H. June 3, 2022).  The court also determined that although a non-owner spouse does have a homestead right (arising under RSA 480:3-a), that right is contingent in nature and is enforceable only upon the death of the owner-spouse.  Id.

Because Brady's husband did not hold any legal title to the
couple's home, the Bankruptcy Court concluded that he held no
current enforceable homestead right under RSA 480:1.  And,
because his spouse, Brady, had obviously not predeceased him,
that court concluded that he held no present homestead right
under RSA 480:3-a — at least not one of any monetary value.
Consequently, Brady was not entitled to claim a homestead
exemption on his behalf on Schedule C of her bankruptcy
petition.  For the same reasons, the court concluded that
Brady's husband did not hold a secured lien on the couple's home
and, therefore, Brady was unable to list such a lien on Schedule
D.

## Discussion

It is appropriate to begin by identifying what is <u>not</u> at
issue in this case.  First, there is no dispute that the
dispositive question of law — whether Brady's husband currently
holds a non-contingent $120,000 homestead right in the couple's
home — is governed by New Hampshire law.  Second, all seem to
agree — indeed, the Trustee concedes — that if Brady's husband
<u>had</u> held joint title to the couple's home, the couple would have
been "entitled to a combined exemption of $240,000," Appellee's
Brief (document no. 8) at 5, and, presumably, Brady would have
been entitled to list her husband's homestead exemption on

Schedule C to her bankruptcy petition.  The sole legal issue presented, then, is whether, under New Hampshire law, Brady's non-owning husband has a <u>present</u> (i.e., non-contingent) homestead interest in the couple's home, valued at $120,000.

I.   <u>New Hampshire's Statutory Provisions</u>.

A person's homestead right is established and governed by RSA chapter 480.  Two sections of that statute are particularly relevant in this case, and they provide as follows:

RSA 480:1 - Amount

Every person is entitled to $120,000 worth of his or her homestead, <u>or of his or her interest therein</u>, as a homestead.  The homestead right created by this chapter <u>shall exist in manufactured housing</u>, as defined by RSA 674:31, <u>which is owned and occupied</u> as a dwelling by the same <u>person</u> but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

RSA 480:3-a - Duration

The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime.  <u>After the decease of the owner</u>, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor.

(emphasis supplied).

II.  <u>The Bankruptcy Court's Decision</u>.

The Bankruptcy Court concluded that the "owned and occupied" requirement imposed in the second sentence of RSA 480:1 applies not just to manufactured housing but, instead, to all real property occupied as a homestead.  <u>In re Brady</u>, 2022 WL 1913497, at *4.  Consequently, it found that because Brady's husband did not hold joint title to the couple's home, he did not have any homestead right under RSA 480:1.

> The Court is cognizant that RSA 480:1 does not use the word "owner" or "owned" in the first sentence of the statute but rather refers to a homestead and an "interest therein."  However, the second sentence of the statute does refer to property that "is owned and occupied as a dwelling."  With respect to manufactured housing, the statute is clear that someone must <u>own and occupy</u> the manufactured housing in order to assert a homestead exemption under RSA 480:1.  It is not enough to simply occupy it.  From a public policy standpoint, it would be nonsensical for the homestead exemption to be more restrictive for manufactured housing than it is for all other housing.  Thus, the statute as a whole supports an interpretation that ownership and occupancy are required to claim a homestead exemption in all housing.  To interpret the statute otherwise would discriminate against owners of manufactured housing.

<u>In re Brady</u>, 2022 WL 1913497, at *4.  Moreover, the Bankruptcy Court reasoned that its interpretation of New Hampshire's homestead right was consistent with principles of fairness and equity:

> [A] couple has the right to decide that only one of
> them will own the family homestead, perhaps as [a]
> means to shield the family home from claims that lie
> solely against the non-owner.  But . . . such a choice
> has consequences, and one consequence is that the non-
> owner is unable to assert a homestead exemption under
> RSA 480:1.  If it were otherwise, the non-owner would
> be getting the benefit of non-ownership, e.g., not
> subjecting the family home to potential liens and
> attachments by third-party creditors, but would not be
> experiencing the burden of it, i.e., having no
> homestead exemption under RSA 480:1.  That strikes the
> Court as both inequitable and inconsistent with the
> provisions of the statute.

Id. at *3.


In further support of its interpretation of RSA 480:1, the

Bankruptcy Court pointed to RSA 480:8-a, which provides that to

"establish" the homestead right, "the owner of a homestead or

the wife or husband surviving such owner," may file a petition

with the superior court.  Thus, said the court,

> to pursue an action in state court to establish a
> homestead right, one must be the 'owner' of the
> homestead property or the 'surviving spouse' of such
> owner.  This provision makes a distinction between
> ownership and non-ownership, supporting the view that
> RSA 480:1 only protects an owner's homestead right.

Id. (emphasis supplied).[2]

_____

[2]    The Bankruptcy Court also relied upon the opinion in In re
Visconti, 426 B.R. 422 (Bankr. D.N.H. 2001) to support its
interpretation of RSA 480:1.  That reliance, however, seems
misplaced.  In Visconti, the court disallowed the debtor's
invocation of his homestead right because, on the date the

In light of those findings, the court concluded that a
different section of the statute — RSA 480:3-a — creates and
sets the terms of the homestead rights of non-owning spouses:

> [U]nder RSA 480:3-a, the Court finds that the non-
> owner spouse's $120,000 homestead exemption arises
> only upon the death of the owner.  In other words, the
> Debtor's spouse's interest is contingent.  Upon the
> Debtor's death, the non-owner spouse will be able to
> step into the shoes of the owner spouse.  At that
> time, the non-owner spouse will be able to assert a
> $120,000 homestead exemption.  Until then, while the
> non-owner spouse may have a homestead right that can
> be protected by an exemption under RSA 480:3-a, the
> value of that exemption is $0.  The couple is not
> allowed to "double-dip" and claim $240,000 as exempt.
> Otherwise, the ownership requirement of RSA 480:1
> would be irrelevant.

Id. at *5 (emphasis supplied).


In short, it is fair to say that the Bankruptcy Court
concluded that RSA 480:1 requires a person to both occupy and

---

debtor filed his petition, he neither owned the couple's
homestead nor was he still married to its owner.  Consequently,
the Bankruptcy Court held, somewhat unremarkably, that, "No
homestead may be claimed in property owned by an individual to
whom the person is not married, even if they occupy the
property.  Ownership must exist either in the person claiming
the homestead or in that person's spouse.  On the petition date,
the Debtor could not claim any such ownership interest."  Id. at
426 (emphasis supplied).  While some broad dicta in Visconti can
be read to support the Bankruptcy Court's reading of RSA 480:1,
the holding does not resolve the parties' current dispute.  In
this case, Brady's husband was married to her and he occupied
the homestead when Brady filed her bankruptcy petition.

have an ownership interest it the homestead in order to hold a homestead right.  In the Bankruptcy Court's view, RSA 480:3-a, not RSA 480:1, establishes and sets the terms of the homestead right in a non-owning spouse, vesting the $120,000 homestead right only upon the death of the owner spouse.

III. <u>Countervailing Considerations</u>.

The Bankruptcy Court's decision is clear, thoughtful, and logical in its reconciliation of ill-defined statutory language. Still, there are compelling legal arguments that give reason to doubt its conclusions.  As importantly, much of the Bankruptcy Court's opinion relies on policy preferences, equity assessments, and assumptions regarding potential discrimination against owners of manufactured housing.  Those preferences and assumptions are not clearly rooted in expressions of legislative intent or in identified principles of New Hampshire's common law.  Such value judgments are best left to the authoritative province of the New Hampshire Supreme Court.

Among factors weighing against the Bankruptcy Court's interpretation of a non-owning spouse's homestead right is this: the New Hampshire Supreme Court has noted that, as its title suggests ("Duration"), "RSA 480:3-a . . . merely establishes the duration of the homestead right; <u>it does not define the nature</u>

of the right itself." Boissonnault v. Savage, 137 N.H. 229,
232–33 (1993) (emphasis supplied).  That point undermines the
Bankruptcy Court's opinion, which rests on the contradictory
conclusion that RSA 480:3-a actually creates and defines the
homestead rights of non-owner spouses.

Additionally, a separate New Hampshire statutory provision
can certainly be read to imply that non-owning spouses do have a
present, non-contingent, and vested homestead right in the
couple's home.  That statute, which governs levies and
executions, provides that, "[a]ll real estate, except the
homestead right, may be taken on execution, and may be appraised
and set off to the creditor at its just valuation in
satisfaction of the execution . . .."  RSA 529:1.  It goes on to
state that, "Notice of the time and place of sale shall be given
to the debtor, or left at his abode if he resides in the state."
RSA 529:20.  With regard to the homestead right, that statute
provides, in relevant part, that,

> Along with the notice required under RSA 529:20, the
> party in whose name the execution has issued shall
> provide to any person who resides or appears to reside
> on the real estate to be sold, the following notice by
> certified mail:
>
> NOTICE
>
> IF YOU OR YOUR SPOUSE OWNS AND RESIDES IN THIS
> PROPERTY, YOU AND/OR YOUR SPOUSE MAY BE ENTITLED TO A

HOMESTEAD EXEMPTION PURSUANT TO RSA 480:1.  <u>THIS</u>
<u>EXEMPTS $120,000 FOR A SINGLE PERSON AND $240,000 FOR</u>
<u>A MARRIED COUPLE</u>.

529:20-a (emphasis supplied).  While arguable either way

perhaps, the statutorily required terms of the notice seem to be

more easily read to suggest that a spouse need not hold title to

the homestead in order to have a present (and valuable)

homestead right in it.  Rather, provided the person is married

to the owner and resides at the property, the notice requirement

appears to assume that he or she has a non-contingent homestead

right in the amount of $120,000.


     Finally, the New Hampshire Supreme Court's recent opinion

in <u>Sabato v. FNMA</u>, 172 N.H. 128 (2019) stands in contradiction

to the Bankruptcy Court's conclusions.  The facts presented in

<u>Sabato</u> are somewhat complex, but simplified they are as follows.

A husband and wife occupied a home in Pelham, but only the wife

held legal title to the property.  In 2002, the wife refinanced

her purchase money mortgage and secured her loan by giving a

first mortgage deed that was eventually assigned to Federal

National Mortgage Association ("FNMA").  The wife released her

homestead right, but her husband did not sign the mortgage deed

or otherwise release his homestead right.  So, the non-owning

husband's homestead right had priority over FNMA's first
mortgage deed.  <u>See generally</u> RSA 480:4.


Subsequently, the wife and husband gave a second mortgage
deed to secure a $65,000 home equity line of credit, by which
they <u>both</u> released their homestead rights.  Approximately nine
years later, the second mortgage lender foreclosed its mortgage
deed.  That set up the following somewhat odd lien priority:

> **First position**: <u>second mortgage lender</u> up to the value
> of the non-owning husband's $120,000 homestead right
> (which, because FNMA never obtained a release of that
> right, had priority over FNMA's first mortgage); then

> **Second position**: FNMA up to the value of its loan;
> then

> **Third position**: second mortgage lender for the balance
> of its loan, if any, in excess of $120,000.

At the foreclosure sale, the property was sold for $65,000.
Because that was less than the husband's homestead interest
($120,000) the <u>second mortgage lender</u> was lawfully entitled to
retain all sale proceeds up to the value of its outstanding loan
(which happened to be $65,000, so second mortgage lender was
fully paid).  Then, the "unused" balance of the husband's
homestead exemption ($55,000) <u>retained its priority</u> over FNMA's
mortgage.  So, when FNMA subsequently bought the property from
the foreclosure purchaser, it held sole title to that property

<u>subject to</u> the non-owning husband's remaining $55,000 homestead exemption.

For purposes of this case, the critical point of <u>Sabato</u> is this: the New Hampshire Supreme Court treated the non-owning spouse's homestead right as valid, enforceable, and valued at the then-current statutory amount of $120,000.  That is to say, the non-owning husband held a present, non-contingent homestead right and it had a statutorily prescribed value.  To exercise that right and assert its $120,000 value, he did not have to wait for his spouse to pass, nor did he have to "step into the shoes of the owner."  <u>Brady</u> 2022 WL 1913497 at *5. Consequently, the <u>Sabato</u> opinion is at odds with the Bankruptcy Court's conclusion that the "owned and occupied" language in the second sentence of RSA 480:1 applies generally to all real property.  Indeed, several years ago, the Bankruptcy Court (Yacos, J.) had a different perspective, noting that the limiting language in RSA 480:1 applies exclusively to manufactured housing:

> The New Hampshire statutory provision on homestead exemptions in RSA 480:1 (Supp. 1985) is quite brief: "Every person is entitled to $5,000 worth of his homestead, or of his interest therein, as a homestead . . . .."  <u>The remainder of this statutory provision</u> sets forth <u>special rules regarding manufactured housing</u>, i.e., mobile homes, <u>which are not pertinent here</u>.

<u>In re Eckols</u>, 63 B.R. 523, 524 (Bankr. D.N.H. 1986) (emphasis supplied).

The foregoing certainly suggests that, under New Hampshire law, except perhaps with respect to manufactured housing,[3] a spouse need not hold title to the underlying homestead in order to have a vested, non-contingent homestead right; it is sufficient if that person occupies the homestead and is married to the title-holder.

IV.   <u>The "Owned and Occupied" Requirement of RSA 480:1</u>.

As should now be clear, the dispositive issue turns on the meaning and scope of the "owned and occupied" language in the second sentence of RSA 480:1.  If that limitation applies universally — that is, to all real property — then the Bankruptcy Court was correct: Brady's husband holds no homestead right by virtue of RSA 480:1 because he does not hold title to the couple's home.  If, on the other hand, that "owned and occupied" language applies only to manufactured housing, then

---

[3]     The court says "perhaps" with respect to manufactured housing because, as discussed more fully below, one plausible interpretation of RSA 480:1 suggests that even with respect to manufactured housing, a person need <u>not</u> hold title to the property in order to have a homestead right in it, provided he or she occupies it as a homestead and is married to the owner.

the Bankruptcy Court reached the wrong conclusion under state law, and Brady is entitled to invoke her husband's $120,000 homestead exemption.

In 1983, the New Hampshire legislature added the "owned and occupied" language in the second sentence of RSA 480:1 as part of a larger bill that was designed to redefine the way New Hampshire law treated manufactured housing (or "mobile homes," as they had been known).  See An Act Relative to a Transfer Tax on Mobile Homes, Chapter 230 (HB 63), 1981-82 Special Session at 202-09 (effective Aug. 17, 1983).  Historically, manufactured housing had been treated as personal property.  Chapter 230's amendments to various chapters in New Hampshire's Revised Statutes Annotated changed that and provided, going forward, that manufactured housing would be treated as real property. The overarching goal of those amendments was straightforward: to subject the sale of manufactured housing to New Hampshire's real estate transfer tax.

Given the purpose of Chapter 230's statutory amendments, it seems unlikely that the legislature intended to modify existing law as it related to the homestead right, except to provide that the homestead right would be available to those who owned and occupied manufactured housing as a homestead (perhaps — though

not necessarily — on a more restricted basis).  The legislative

history on that point, however, remains murky and the proper

interpretation of the "owned and occupied" language of RSA 480:1

is unresolved.


    There is a plausible interpretation of the 1983 amendments

to RSA 480:1 that does not require both occupancy and ownership

for the homestead right to vest (either in manufactured housing

specifically or, more generally, in any real estate occupied as

a homestead).  Because manufactured housing is often situated on

property owned by a third party (a developer, park owner, or

homeowners' association for example), the legislature may have

employed the "owned and occupied" language as a means to make

clear that the homestead right typically attaches only to the

manufactured housing unit and not the underlying real estate

upon which it is set (unless, of course, the same entity holds

title to both).  That is to say, the homestead right attaches to

manufactured housing when an occupant holds title to the unit

and occupies it as a dwelling; the owner of the underlying real

estate may not claim the homestead right unless that person also

holds title to the manufactured housing unit and occupies it as

a homestead.  There may have been no legislative intent to alter

the then-current statutory scheme which seems to have afforded a

present, non-contingent homestead right to both the owner of the homestead and his or her non-owning (but occupying) spouse.

Similarly, there is a plausible interpretation of RSA 480:8-a (upon which the Bankruptcy Court relied) that does not compel the conclusion that non-owning spouses have no present homestead right under RSA 480:1.  To be sure, that statute provides that only the "owner" of the homestead or the surviving spouse of the owner may petition the superior court to "establish" the homestead right.

> **Establishing Right.**  The superior court, upon petition <u>of the owner</u> of a homestead <u>or the wife or husband surviving such owner</u>, or upon petition of a judgment creditor and such notice as it may order, may appoint appraisers and cause the homestead right to be set off, and a record of the proceedings being made in the registry of deeds, the right shall be established as against all persons.

RSA 480:8-a (emphasis supplied).  As noted above, the Bankruptcy Court found that provision to be supportive of its conclusion that the spouse of the homestead owner has no present homestead right of any value and that his or her valuable right vests only upon the owning spouse's death.  But it is also reasonable to read RSA 480:8-a as merely establishing a <u>standing</u> priority in the owning spouse with regard to bringing a petition in Superior Court in the first instance.  That is to say, the legislature

may have deemed it best to have the owner of the underlying homestead property file any such petitions and, only if that owner had died, to allow the surviving spouse to file such a petition.  Again, however, the legislative intent and the reason for the language employed in that statute remain unclear.

V.   Certification to the N.H. Supreme Court.

When, in situations such as this, a federal court is called upon to apply state law, it "must take state law as it finds it: not as it might conceivably be, some day; nor even as it should be."  Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (citation and internal punctuation omitted).  When state law has been authoritatively interpreted by the state's highest court, this court's role is clear: it must apply that law according to its tenor.  See Id.  When the law is unclear but the signposts are only modestly blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority.  See Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987).  However, this court is and should be hesitant to blaze new, previously uncharted state-law trails.  Accordingly, when a dispositive legal question is novel and the state's law in the area is unsettled, certification is often appropriate.  See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974); Arizonans for

Official English v. Arizona, 520 U.S. 43, 76 (1997).  See also
Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997)
("[W]hen the meaning of a state law depends on the
decisionmaker's ability to discern the state legislature's
intent from an array of mixed signals, considerations of
federalism, comity, and practicality suggest that the state's
highest tribunal is best positioned to make an informed and
authoritative judgment.").  The signposts here are more than
modestly blurred and the Bankruptcy Court's decision exposes the
array of mixed signals found in the state's statutes and
judicial precedent.

        The New Hampshire Supreme Court has yet to address the
nuanced issues presented in this case.  Moreover, resolution of
those issues implicates significant public policy matters for
the State of New Hampshire.  Indeed, the New Hampshire
Department of Justice, Consumer Protection Division, has
asserted that resolution of the issues presented in this case
"will have a broad impact on the ability of New Hampshire
consumers to obtain a fresh start through bankruptcy and may
endanger home ownership for married consumers outside of
bankruptcy . . .."  Amicus Brief (document no. 5) at 1.
Accordingly, the prudent course at this stage is to certify the
dispositive questions of state law.  Otherwise, our Court of

Appeals would likely have to revisit the question of certification — a situation that does not represent an efficient use of either judicial or the litigants' resources.  And, even if the Court of Appeals decided to resolve the matter on the merits, lingering doubt would still remain until the New Hampshire Supreme Court authoritatively construed New Hampshire's statutes and reconciled New Hampshire legal precedent.  In the meantime, uncertainty and disruption and a risk of conflicts in the administration of legal claims related to the homestead right could continue unabated.

**Conclusion**

The court proposes to certify the following questions of law to the New Hampshire Supreme Court:

1.   Does the ownership requirement described in the second sentence of N.H. Rev. Stat. Ann. 480:1 apply to all real property occupied as a homestead, or does it apply only to manufactured housing occupied as a homestead?

That is to say, assuming the homestead is real property other than manufactured housing, does the non-owning occupying spouse of one who holds a homestead right pursuant to RSA 480:1 also have a present, vested, non-contingent homestead right of his or her own, which is currently valued at $120,000? and

2.   Does a non-owning spouse who occupies a manufactured housing unit with an owning spouse have a present (i.e., non-contingent) and enforceable homestead right with respect to that home, which is currently valued at $120,000?

See generally N.H. Supr. Ct. R. 34.  If any party objects to the form of the questions the court proposes to certify, a written objection, along with suggested alternative language, shall be filed on or before **December 15, 2022.**  The court proposes to submit to the New Hampshire Supreme Court, as its statement of facts, the facts as presented in this order.  If any party objects or wishes the court to supplement that statement of facts, that party shall file an objection and a proposed statement of supplemental facts by the same date.

      **SO ORDERED.**

                                                Steven J. McAuliffe
                                                United States District Judge

December 1, 2022

cc:  Counsel of Record

2022 WL 1913497
United States Bankruptcy Court, D. New Hampshire.

IN RE: Katherine R. BRADY, Debtor Bk. No. 21-

10712-BAH

|

Signed June 3, 2022

**Attorneys and Law Firms**

Leonard G. Deming, II, Esq., Deming Law Office, Nashua, New Hampshire, Attorney for Debtor.

Lawrence P. Sumski, Esq., Merrimack, New Hampshire, Chapter 13 Trustee.

### MEMORANDUM OPINION

Bruce A. Harwood, Chief Bankruptcy Judge

#### I. INTRODUCTION

**\*1**  The Court has before it an objection to the Debtor's claim of homestead exemption (Doc. No. 19) (the "Homestead Exemption Objection") and an objection to the Debtor's amendment to Schedule D (Doc. No. 47) (the "Schedule D Objection") (together, the "Objections"). The Court held a hearing on the Objections on May 20, 2022, and took the matters under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

#### II. FACTS AND PROCEDURAL BACKGROUND

The Debtor filed an individual chapter 7 bankruptcy petition on December 17, 2021. On Schedule A/B, she listed an ownership interest in a single-family home located in Merrimack, New Hampshire (the "Property"). The Property is owned solely by the Debtor pursuant to a deed dated June 2, 2014. On the petition date, the Debtor resided at the Property with her husband and their two children. She valued the Property as being worth $236,100.

On Schedule C, the Debtor claimed a $120,000 homestead exemption pursuant to New Hampshire Revised Statute Annotated ("RSA") 480:1. On Schedule D, she listed a mortgage claim totaling $178,445.61 and no other secured claims.

On January 25, 2022, Edmond Ford, chapter 7 trustee (the "Chapter 7 Trustee"), conducted the section 341 meeting of creditors. Thereafter, on February 1, 2022, the Debtor amended Schedules A/B and C. She increased the value of the Property to $346,700, and she asserted an additional $120,000 homestead exemption for her "Non-owner Husband" (as she described him in her Notice of Amended Schedules) pursuant to RSA 480:1:



On February 4, 2022, the Chapter 7 Trustee retained counsel to investigate and potentially liquidate assets. On February 9, 2022, the Debtor moved to convert her case to chapter 13. A hearing on the motion to convert was scheduled for March 9, 2022.

Before the hearing on the motion to convert was held, the Chapter 7 Trustee filed the Homestead Exemption Objection, which was scheduled for hearing on March 23, 2022. The Chapter 7 Trustee objected to the Debtor's claim of a second homestead exemption under RSA 480:1 in the amount of $120,000 on behalf of her non-debtor, non-owner husband, and sought disallowance of the exemption.

On March 9, 2022, the Court converted the Debtor's case to a chapter 13 case.

On March 23, 2022, the Court held a hearing on the Homestead Exemption Objection at which Lawrence P. Sumski, the chapter 13 trustee (the "Chapter 13 Trustee"), appeared. The Chapter 13 Trustee indicated he intended to pursue the Homestead Exemption Objection. The Court ordered the Chapter 13 Trustee to file a supplemental objection by April 25, 2022. The parties indicated their willingness to file a joint stipulation of facts, which the Court ordered the parties to file by May 2, 2022.

**\*2**  The parties filed a joint statement on facts on April 1, 2022. That same day, the Debtor amended Schedule D to include the following secured claim of her non-debtor, non-owner husband:

On April 5, 2022, the Chapter 13 Trustee objected to this amendment. The Court scheduled a hearing on the Schedule D Objection for May 20, 2022, the same day as the hearing on the Homestead Exemption Objection.

The Chapter 13 Trustee and the Debtor both filed memoranda of law in support of their positions. The Court held a hearing on May 20, 2022, and took the Objections under advisement.

## III. DISCUSSION

### A. Homestead Exemption

"The purpose of the homestead exemption is to secure to debtors and their family the shelter of the homestead roof." Deyeso v. Cavadi, 165 N.H. 76, 79 (2013). Courts are to construe the homestead liberally. In re Myers, 323 B.R. 11, 13 (Bankr. D.N.H. 2005). The Bankruptcy Code and Rules set forth the framework for asserting and objecting to a debtor's claim of exemption in a bankruptcy case. 🔖 Federal Rule of Bankruptcy Procedure 4003(a) provides that "[a] debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." Subsection 522(b)(1) of the Bankruptcy Code provides in relevant part that "an individual debtor may exempt from property of the estate property listed in ... paragraph (3) of this subsection." Subsection 522(b)(3) provides that "[p]roperty listed in this paragraph is ... any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition in the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition ..." Accordingly, the Debtor asserted New Hampshire's exemptions on Schedule C.

New Hampshire's homestead exemption is set forth in RSA 480:1, which states:

Every person is entitled to $120,000 worth of his or her homestead, or of his

or her interest therein, as a homestead. The homestead right created by this chapter shall exist in manufactured housing, as defined by RSA 674:31, which is owned and occupied as a dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

RSA 480:3-a provides further that:

The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime. After the decease of the owner, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor.

"[A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." 🔖 Fed. R. Bankr. P. 4003(b)(1). The party objecting to an exemption bears the burden of proof. 🔖 Fed. R. Bankr. P. 4003(c).

The Chapter 13 Trustee objects to the Debtor's assertion of a homestead exemption pursuant to RSA 480:1 on behalf of her non-debtor spouse, who resides at the Property but has no ownership interest in it. [1] In support of his position, the Chapter 13 Trustee cites various court decisions from this district, including In re Visconti, 426 B.R. 422 (Bankr. D.N.H. 2010), where the Court clearly stated that "the homestead exemption under RSA 480:1 requires both occupancy and ownership." Id. at 426 (emphasis added). The Court explained further that "a spouse who does not hold an ownership interest does have a right to occupy the homestead during the owner-spouse's lifetime and can claim a homestead right for their life after the death of the owner-spouse." Id. (citing RSA 480:3-a).

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    2

The Court reiterated the ownership requirement in its recent decision in In re St. Laurent, 2022 BNH 002, when it stated:

**\*3** RSA 480:1 provides in relevant part that "[e]very person is entitled to $120,000 worth of his or her homestead, or of his or her interest, therein as a homestead." The New Hampshire Supreme Court has held that the homestead right must be established by actual physical possession of a property with the intent to occupy it as a home. Currier v. Woodward, 62 N.H. 63, 64 (1882). However, "occupancy alone does not preserve the homestead right—it also requires ownership." Visconti, 426 B.R. at 425-26 (citing Gerrish v. Hill, 66 N.H. 171 (1890) (no homestead right when the debtors sold a farm but continued to live on it); 🏳 Beland v. Goss, 68 N.H. 257 (1895) (homestead right was lost when the property was sold and the debtors moved out); Stewart v. Bader, 154 N.H. 75, 89 (2006) (defendant lost homestead right by lack of occupancy but court also noted that the property was sold several years before)). Thus, "the homestead exemption under RSA 480:1 requires both occupancy and ownership." Visconti, 426 B.R. at 426.

Id. at 4. Despite these clear pronouncements, the Debtor contends there is no ownership requirement to claim a homestead exemption under RSA 480:1, arguing that the statute protects a "homestead interest" and that the Court's statements in Visconti were merely dicta. The Court disagrees.

Judge Deasy found that the debtor in Visconti was not entitled to a homestead exemption in the property because (1) the debtor did not have an ownership interest in the property, and (2) the debtor was not married to someone who had an ownership interest in the property. Visconti, 426 B.R. at 426. The finding that the debtor did not own the property was critical to Judge Deasy's analysis.

The Debtor argues that her spouse has an "interest" in the Property that is protected by RSA 480:1. The Chapter 13 Trustee agrees that a non-debtor, non-owner spouse may have an "interest" in the Property. For example, a spouse may have a tenancy interest, an inheritance right, or an interest  in the property as part of a marital estate in a state court divorce proceeding. The Chapter 13 Trustee asks, though: if he offered the non-owner spouse money for any of those "interests," what would he get? Would he be able to occupy the home? Would a third party be able to obtain a lien or attachment against that interest in state court? The Chapter 13 Trustee argues no, and the Court agrees.

The Chapter 13 Trustee acknowledges that a couple has the right to decide that only one of them will own the family homestead, perhaps as means to shield the family home from claims that lie solely against the non-owner. But the Chapter 13 Trustee argues that such a choice has consequences, and one consequence is that the non-owner is unable to assert a homestead exemption under RSA 480:1. If it were otherwise, the non-owner would be getting the benefit of non- ownership, e.g., not subjecting the family home to potential liens and attachments by third-party creditors, but would not be experiencing the burden of it, i.e., having no homestead exemption under RSA 480:1. That strikes the Court as both inequitable and inconsistent with the provisions of the statute.

**\*4** The Court is cognizant that RSA 480:1 does not use the word "owner" or "owned" in the first sentence of the statute but rather refers to a homestead and an "interest therein." However, the second sentence of the statute does refer to property that "is owned and occupied as a dwelling." With respect to manufactured housing, the statute is clear that someone must own and occupy the manufactured housing  in order to assert a homestead exemption under RSA 480:1. It is not enough to simply occupy it. From a public policy standpoint, it would be nonsensical for the homestead exemption to be more restrictive for manufactured housing than it is for all other housing. Thus, the statute as a whole supports an interpretation that ownership and occupancy are required to claim a homestead exemption in all housing. To interpret the statute otherwise would discriminate against owners of manufactured housing.

If ownership is not a requirement for asserting a homestead exemption under RSA 480:1, the Court questions whether there is any limit to the exemption's scope. What if a homeowner has several adult children who live in the family homestead? Is every adult child who lives in the home able to assert a $120,000 exemption? What about a common law spouse or a live-in girlfriend, boyfriend, or partner? Can they assert a $120,000 homestead exemption? After all, it is their home too, is it not? The Debtor argues that the exemption in RSA 480:1 does not extend that far, but she does not articulate any principled limitation on her construction of the homestead exemption statute.

The Court notes further that RSA 480:8-a provides:

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   3

The superior court, upon petition of the <u>owner</u> of a homestead or the <u>wife or husband surviving such owner</u>, or upon petition of a judgment creditor and such notice as it may order, may appoint appraisers and cause the homestead right to be set off, and a record of the proceedings being made in the registry of deeds, the right shall be established as against all persons. (Emphasis added).

Thus, to pursue an action in state court to establish a homestead right, one must be the "owner" of the homestead property or the "surviving spouse" of such owner. This provision makes a distinction between ownership and non- ownership, supporting the view that RSA 480:1 only protects an owner's homestead right.

The Debtor also argues that § 522 does not restrict the scope of its application to purely the "debtor's exemptions," and, therefore, the Debtor may "use New Hampshire exemptions to their full extent which includes an exemption in the non-owner spouse." While it may be true that § 522 does not limit its application to a debtor's exemptions,[2] that proposition does not resolve a fundamental issue presented by the facts of this case: what exemption does a non-owner spouse have in a family homestead?

The First Court of Appeals stated in Deutsche Bank Nat'l Trust v. Pike, 916 F.3d 60, 68 (1st Cir. 2019):

When a married couple resides together in a home, the homestead right "extends to ... both spouses, even when only one spouse legally owns the homestead." Maroun v. Deutsche Bank Nat'l Tr. Co., 167 N.H. 220, 109 A.3d 203, 208 (2014) (citing N.H. Rev. Stat. Ann. § 480:3-a); see also N.H. Rev. Stat. Ann. § 529:20-a. The homestead right of a property owner's spouse is established once he or she physically occupies the subject property. Walbridge v. Estate of Beaudoin, 163 N.H. 804, 48 A.3d 964, 966 (2012).

This Court also addressed the issue in In re Hopkins, 2021 BNH 004, and found that "the exemption in RSA 480:3-a is for spouses who do not have an ownership interest in their

residence at the time of the homeowner's death." Id. at 6. Upon the homeowner's death, surviving spouses are entitled to both occupy the homestead during their lifetime and to protect $120,000 of their interest in the family home.

**\*5** In this case, the Debtor has not asserted a homestead exemption under RSA 480:3-a on Schedule C on behalf of her non-debtor, non-owner spouse, but only an exemption pursuant to RSA 480:1,[3] which is not proper, as her spouse is not an owner of the Property. But even if she had asserted an exemption under RSA 480:3-a, the Court finds that the non-owner spouse's $120,000 homestead exemption arises only upon the death of the owner. In other words, the Debtor's spouse's interest is contingent. Upon the Debtor's death, the non-owner spouse will be able to step into the shoes of the owner spouse. At that time, the non-owner spouse will be able to assert a $120,000 homestead exemption. Until then, while the non-owner spouse may have a homestead right that can be protected by an exemption under RSA 480:3-a, the value of that exemption is $0. The couple is not allowed to "double-dip" and claim $240,000 as exempt. Otherwise, the ownership requirement of RSA 480:1 would be irrelevant.

Because the Debtor's spouse is not an owner of the Property, he is not entitled to claim an exemption under RSA 480:1. Accordingly, the Debtor is unable to assert such an exemption in Schedule C. For that reason, the Homestead Exemption Objection must be sustained.

### B. Amendment to Schedule D

Federal Rule of Bankruptcy Procedure 1009(a) permits a debtor to amend schedules "as a matter of course at any  time before the case is closed." A bankruptcy court has the discretion to deny an amendment to schedules based up a showing of either:

1. Bad faith; or

2. Prejudice to creditors or third parties.

Wood v. Premier Capital, Inc. (In re Wood), 291 B.R. 219, 228 (B.A.P. 1st Cir. 2003).

The Chapter 13 Trustee filed the Schedule D Objection stating simply:

The issue of the appropriateness of a second homestead exemption filed by the debtor on behalf of a nondebtor, non-co-owner of her residential real estate is currently before the Court. The debtor through her counsel has expressed a legal theory that the non- debtor, non-co-owner husband, Daniel J. Brady, already has a legal interest of some sort in the property, and so the debtor has filed an amended Schedule D to assert the "lien" that he has on the residential property. The issue is squarely before the Court but to make sure it is preserved for the scheduled hearing the undersigned hereby objects to the amendment to Schedule D to show the fictional lien in the amount of $120,000.00.

The Chapter 13 Trustee does not explicitly contend that the amendment was made in bad faith or that it would prejudice creditors or third parties. Rather, his objection goes to the merits of the non-owner spouse's legal rights, i.e., whether he holds a secured claim against the Property.

The Debtor contends that the non-owner spouse's interest in the Property is "an encumbrance upon the family home which is separate from the Debtor's own homestead exemption right." The Debtor has listed this "encumbrance" on Schedule

D and described it as a "statutory lien" and "lien on property." The Debtor has cited no legal authority (other than RSA 480) for the proposition that the non-owner's interest in the Property is protected by a "statutory lien" or "lien on property" as asserted in Schedule D. The Court is aware of none. In the Court's view, the non-owner spouse does not have any lien rights in the Property. Rather, as explained above, a non-owner spouse may be able to assert a homestead exemption in the Property pursuant to RSA 480:3-a. But, that interest in the Property is not a secured claim that should be listed on Schedule D. Because the Court finds that the non-debtor, non-owner spouse does not have a lien on the Property as asserted by the Debtor, the Debtor's amendment to Schedule D must be denied.

### IV. CONCLUSION

For the reasons set forth in this opinion, the Court finds that the Debtor's assertion of a homestead exemption under RSA 480:1 on behalf of her non-owner spouse is improper as is her amendment to Schedule D asserting that her non- owner spouse possesses a lien that secures his interest in the Property. Accordingly, the Court will issue a separate order sustaining the Homestead Exemption Objection and the Schedule D Objection. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**\*6** ENTERED at Concord, New Hampshire.

**All Citations**

Slip Copy, 2022 WL 1913497, 2022 BNH 003

### Footnotes

1      In chapter 13, exemptions are relevant as they affect the "best interest of creditors test" set forth in ⚑ 11 U.S.C. § 1325(a)(4), which provides that a plan can be confirmed if "the value as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

The Debtor filed a chapter 13 plan on April 10, 2022. She proposes to pay $31,500 over the life of her plan at the rate of $525 per month for 60 months, which will result in an estimated dividend of 66% toward estimated unsecured claims of $42,218. The liquidation analysis in the plan reflects that unsecured creditors will receive 0% in chapter 7, based on the Debtor inclusion of $240,000 in homestead exemptions under RSA 480:1. If only the Debtor's $120,000 exemption were included, there would be $48,254 available for creditors (less

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

chapter 7 administrative expenses) resulting in a greater dividend in a chapter 7 case than that proposed by the Debtor in her plan. For that reason, the Debtor's plan would not meet the "best interest of creditors test."

[2]     The Court will assume this is true without deciding it.

[3]     While the Debtor has also cited 🚩RSA 480:2 in Schedule C, that section of the statute was repealed in 1973.

---

**End of Document** <span style="float:right">© 2023 Thomson Reuters. No claim to original U.S. Government Works.</span>